**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LIFE STAR PHARMACY, INC., ) | |
| *doing business as*, ) | |
| LIFE STAR PHARMACY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23CV186 JAR |
| ) | |
| EXPRESS SCRIPTS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's motion to compel discovery [ECF No. 50], motion for hearing [ECF No. 54], and motion for leave to file under seal [ECF No. 52]. These motions are fully briefed and ready for disposition.

**I.    Background and Facts**

Plaintiff Life Star Pharmacy, Inc. ("Life Star") was a member of Defendant Express Scripts, Inc.'s ("Express Scripts") pharmacy provider network from March 2018 until August 19, 2022, when Express Scripts terminated its contract with Life Star. The termination occurred after a fraud, waste, and abuse investigation, which Express Scripts initiated on March 23, 2022. As part of that investigation, Express Scripts requested that Life Star "provide a summary of all purchases, returns, and credits from November 16, 2020, through March 8, 2022, along with a photocopy of the prescription(s) enclosed in the letter, prescriber information, receipt of copayment, and the appropriate signature/shipping log entries." ECF No. 56-8 at 97. After issuing its findings of insufficient proof of Life Star's copayment collection or use of improper means to charge off patient copayments for 11 prescription drug claims, Express Scripts terminated its contract with Life Star. The provider manual required Life Star to "collect the full

Copayment from Members, and that the Copayment is not changed or waived unless required by law." ECF 53-2 at 3. The provider manual also stated that "[f]ailure to collect the Member Copayment is … a material breach of Network Provider's obligations and may result in immediate termination." *Id*. Life Star maintains that before it received notice of the termination, it had already submitted comprehensive documentation that resolved the alleged discrepancies. ECF No. 23 at 14. Further, Life Star claims that Express Scripts acted in bad faith by unreasonably refusing to consider Life Star's submissions. *Id*. at 15.

On February 16, 2023, Life Star filed this action against Express Scripts, alleging three breach of contract claims (Counts One-Three), breach of the implied covenant of good faith and fair dealing (Count Four), and breach of New York Public Health Law § 280-a (Count Five). Life Star twice amended its Complaint. Express Scripts has asserted affirmative defenses.

Express Scripts filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requesting the Court to dismiss Counts Three and Five of Life Star's Second Amended Complaint. On March 4, 2024, the Court issued an Order granting Express Scripts' motion and dismissing Counts Three and Five of Life Star's Second Amended Complaint with prejudice. ECF No. 39. Life Star then filed a motion requesting that the Court reconsider its Order dismissing Count Three and reinstate that claim. In the alternative, Life Star requested that the Court amend its Order to reflect that Count Three is dismissed without prejudice and allow Life Star an opportunity to amend its Complaint once again. The Court issued an Order granting Life Star's motion to a limited extent to reflect that Counts Three and Five of the Second Amended Complaint are dismissed without prejudice and denying Life Star's motion for reinstatement of Count Three and to amend its Second Amended Complaint. ECF No. 71.

In its operative Second Amended Complaint, Life Star challenges Express Scripts' termination. Life Star seeks declaratory relief and injunctive relief that would require Express

2

Scripts to readmit Life Star into its pharmacy provider network. Life Star also seeks monetary damages, including an award of any and all amounts that were erroneously recouped and withheld from Life Star due to Express Scripts' investigation, and compensatory and/or consequential damages, including lost profits or savings, injury to reputation, loss of customers and/or business resulting from Express Scripts' termination.

Following the Rule 16 Conference and the issuance of the Case Management Order, Express Scripts served 46 Requests for Production on March 15, 2024. Life Star provided written responses and objections on April 15, 2024, and has amended its responses multiple times. The parties' counsel met and conferred on May 15, 2024 and have shared subsequent email communications to discuss alleged deficiencies and discuss potential resolutions, but the parties were unable to see eye to eye.

On June 21, 2024, Express Scripts filed a motion to compel discovery, a motion for hearing, and a motion for leave to file under seal. Life Star filed a memorandum in opposition to the motion to compel discovery, to which Express Scripts filed a reply. Life Star did not file any opposition to the motion for hearing or the motion for leave to file under seal.

## II. Defendant's Motion to Compel Discovery

### A. Standard

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). "Upon a showing by the requesting party that the discovery is relevant, the burden is on the party resisting

3

discovery to explain why discovery should be limited." *CitiMortgage, Inc. v. Allied Mortg. Group, Inc.*, No. 4:10-CV-1863-JAR, 2012 WL 1554908, at *2 (E.D. Mo. May 1, 2012). "Bare assertions that the discovery requested is overly broad, unduly burdensome, oppressive, or irrelevant are ordinarily insufficient to bar production." *Natoli v. Kelley*, No. 4:20-CV-01242-AGF, 2022 WL 2700312, at *1 (E.D. Mo. July 12, 2022).

### B. Disputed Discovery Requests

Express Scripts' motion to compel discovery concerns thirteen Requests for Production ("RFPs"). Four RFPs (Nos. 31-34) seek Life Star's copayment collection data, documents, and other information such as Life Star's use of a house account to charge copayments. Another three RFPs (Nos. 28-30) seek documents and communications concerning Life Star's owner Jose Solano's statements during Express Scripts' fraud, waste, and abuse investigation. The final six RFPs (Nos. 35-40) at issue in this motion seek documents related to Life Star's claimed damages. All thirteen RFPs seek information from the start of the parties' contractual relationship in March 2018 to the present.

#### 1. Copayment collection information

Express Scripts' RFPs sent to Life Star that relate to copayment collection information include the following:

> **RFP No. 31**: Documents and Communications during the Relevant Time Period reflecting whether or not You collected the copayment due to You for any prescription You dispensed, provided, or sold to any Express Scripts member, including the date any copayment was due and the date any copayment was collected. By way of example only, this Request includes Documents such as invoices, bills, receipts, correspondence, patient statements, or account balances, as well as electronically stored information, such as Structured Data and Unstructured Data, that would reflect whether or not such copayments were collected and, if they were collected (in whole or in part), when they were collected.

> **RFP No. 32**: Documents during the Relevant Time Period sufficient to show the prescription number, the date of the prescription, and the customer or patient name for (a) any prescription for which You charged to a house account any copayment due to You

4

>    for (b) any prescription You dispensed, provided, or sold to any Express Scripts member.
>
>    **RFP No. 33**: Documents and Communications concerning any house account to which You have charged any copayment owed to You by any Express Scripts member.
>
>    **RFP No. 34**: Documents sufficient to show the total number of copayments, the total dollar value of copayments, and the total outstanding balance related to any copayments charged to any house account, for copayments due to You for any prescription you dispensed, provided, or sold to any Express Scripts member.

ECF No. 56-8 at 12-13.

Life Star has objected to the scope of these requests, stating it would limit its responses to the claims reviewed by Express Scripts during the above-referenced investigation from February 16, 2021 through March 8, 2022, which only identified 35 such claims. Life Star also maintains that these four RFPs seek irrelevant information, are overly broad, and it would be unduly burdensome and oppressive to collect documents for thousands of claims that were not originally investigated as part of Express Scripts' initial investigation so that Express Scripts can attempt to impose a post-hoc justification for Life Star's termination.

In response, Express Scripts states that the termination of the parties' contract occurred because Life Star failed to collect member copayments as required under the contract, and thus the RFPs seeking information concerning Life Star's copayment collection history are relevant. Express Scripts argues that when a party terminates a contract and is later sued for breach, it can defend against that breach of contract claim on any ground that would defeat the claim, regardless of whether the ground was stated or known at the time of termination. *See, e.g.*, *W. Auto Supply Co. v. Sullivan*, 210 F.2d 36, 40 (8th Cir. 1954) ("a party to a contract may defend on the ground that there existed at the time a legal excuse for non-performance by him although he was ignorant of that fact at the time of the breach."); *Hosp. Prods., Inc. v. Sterile Design, Inc.*, 734 F. Supp. 896, 903 (E.D. Mo. 1990) ("[t]he Court is unaware of any general requirement under Missouri law that a party seeking to terminate a contract must announce its grounds for

5

doing so at the time of termination and be thereafter limited to relying on only those grounds in defending a subsequent action for breach of contract."). However, Express Scripts states that if the Court decides to restrict these four RFPs, it would be willing to limit their scope to the period of November 16, 2020 through August 19, 2022, which captures the starting point of Express Scripts' investigation to the termination of the contract.

The Court finds that Express Scripts may conduct discovery regarding copayment collection information, as Life Star's performance with respect to such collection is relevant for purposes of discovery[1] to Express Scripts' defense against the breach of contract claim. The scope of these RFPs, however, is overbroad and is unnecessary for Express Scripts' defense. Specifically, requesting documents and communications from such a wide period of time – March 2018 to the present – is disproportional to the needs of the case and the burden of production would outweigh its likely benefit. *See, e.g.*, *Bulfin v. Rainwater*, No. 4:20 CV 689 JMB, 2022 WL 670126, at *2 (E.D. Mo. Mar. 7, 2022) (ordering an "overbroad" interrogatory to be "limited in time to a [four-year] period"). Accordingly, the Court orders Life Star to produce the documents and communications responsive to RFP Nos. 31-34, but only covering the period of November 16, 2020 through August 19, 2022.

### 2. Life Star's owner's statements

The RFPs related to Life Star's owner Jose Solano's statements during Express Scripts' investigation include the following:

> **RFP No. 28**: Documents and Communications concerning the statement in the June 24, 2022 email from Jose Solano at Life Star to Steve Rutkowski at Express Scripts, attached hereto as Exhibit K, that: "Receipts for less than 10 dollars are stored in a box. Which was flooded in the basement." This request includes but is not limited to Documents and

---

[1] The Court's findings in this Order are limited to the area of discovery. None of the Court's findings should be interpreted to reach the issue of admissibility. *See* Fed. R. Civ. P. 26(b)(1) ("Information within th[e] scope of discovery need not be admissible in evidence to be discoverable.").

>Communications related to: (a) the date of the flood; (b) the cause of the flood; (c) any damage caused by the flood, (d) any insurance coverage sought in connection with the flood or damage caused by the flood; and (e) any efforts undertaken and costs incurred to repair damage caused by the flood.
>
>**RFP No. 29**: Documents and Communications concerning the statement in the June 24, 2022 email from Jose Solano at Life Star to Steve Rutkowski at Express Scripts, attached hereto as Exhibit K, that: "We help our elderly patients with their huge copays. We enroll them into grants and help them acquire medications free of cost even when we don't profit and guess what! Word spreads… They tell their friends and doctors love helping patients. It's really that simple." This request includes but is not limited to Documents and Communications related to: (a) any means by which Life Star helps or has helped any customer or patient with their copayment; (b) any means by which Life Star helps or has helped any customer or patient acquire medication free of cost; (c) any grant Life Star has applied for, sought out, requested, received, been given, or been awarded to help any customer or patient pay for their prescription medications; (d) any Person who has provided Life Star with a grant, loan, or other financial support, to help any customer or patient pay for their prescription medications; and (e) any evidence that, by helping any customer or patient with their copayment or to otherwise acquire medication free of cost, Life Star has foregone a profit.
>
>**RFP No. 30**: Documents and Communications concerning the statement in the June 24, 2022 email from Jose Solano at Life Star to Steve Rutkowski at Express Scripts, attached hereto as Exhibit K, that: "When we help patients with their copays it forces express scripts to pay for the remaining portion of the cost and that is why I'm under investigation plain and simple." This request includes but is not limited to Documents and Communications identifying any prescription where Life Star has helped any customer or patient with their copayment and Express Scripts has paid Life Star any amount for that prescription.

ECF No. 56-8 at 11-12.

Express Scripts argues that this information is relevant to whether Life Star complied with its contractual obligations, as Mr. Solano's statements pertain to Life Star's alleged loss of copayment receipts due to a flood and its claimed practice of helping elderly patients acquire medications "free of cost" which "forces" Express Scripts to pay the remaining cost.

Life Star states in its response in opposition that it "believes that any dispute related to Solano RFP Nos. 28-30 have been or will be resolved by the submission of a supplemental production and amended written responses confirming that there are no other documents responsive to these RFPs." ECF No. 59 at 11. For its part, Express Scripts maintains that the

7

dispute concerning these RFPs has not been resolved and asks the Court to order Life Star to produce all documents without limitation.

The Court finds that RFP Nos. 28-30 are indeed relevant, but additional limitations must be imposed because they are currently overbroad and disproportional to the needs of the case. As RFP Nos. 29-30 refer to copayment collection practices, the Court directs that, like RFP Nos. 31-34, responsive documents and communications should only cover the period of November 16, 2020 through August 19, 2022. In contrast, RFP No. 28 concerns the apparent flood mentioned by Mr. Solano and does not specifically refer to copayment collection practices, so the scope of March 2018 to the present is appropriate. Further, the language of RFP No. 29 appears to open its search to all copayment collection practices outside of those with Express Scripts members, but the request should be limited to such practices with Express Scripts members. Accordingly, the Court orders Life Star to produce documents and communications responsive to RFP No. 28 as written and to RFP Nos. 29-30 only for the period of November 16, 2020 through August 19, 2022 and limited to information concerning Express Scripts members.

### 3. Damages information

The RFPs seeking information regarding Life Star's damages including the following:

**RFP No. 35**: Documents supporting Your allegation in Paragraph 55 of Your Complaint that Life Star's contract with Express Scripts represented, during the two years prior to this Lawsuit, "revenues exceeding $5 million for Life Star or approximately 13% of Life Star's overall business."

**RFP No. 36**: Documents supporting Your allegation in Paragraph 57 of Your Complaint that "for the period beginning January 1, 2021 through December 31, 2021, Life Star's contract with Express Scripts represented approximately 31% of Life Star's total revenues. Stated in dollar figures, the contract represented $3,694,311.44 in revenues in 2021."

**RFP No. 37**: Documents supporting Your allegation in Paragraph 59 of Your Complaint that "[f]or the period of January 1, 2022 through August 19, 2022, Life Star's contract with Express Scripts represented approximately 6% of Life Star's total revenues throughout 2022. Stated in dollar figures, the contract represented $1,818,292.16 in

8

revenues during this time period."

**RFP No. 38**: Documents supporting Your allegation in Paragraph 61 of Your Complaint that "[f]or the period following August 19, 2022 to present, Life Star suffered damages in excess of $1 million for the remainder of the 2022 year, damages which continue to increase and accrue through 2023 and beyond."

**RFP No. 39**: Documents, including financial statements and other financial or accounting Documents, showing Your monthly, quarterly, and/or annual (a) financial results, (b) revenues, and (c) profits or losses during the Relevant Time Period.

**RFP No. 40:** Your federal and state tax returns for the Relevant Time Period.

ECF No. 56-8 at 13-14.

Life Star objects to these RFPs, arguing that the information is confidential and proprietary, and has stated that it will withhold "general financial statements, tax returns, revenue and profit/loss statements on the basis of its objections to these requests." Moreover, Life Star maintains that the primary relief it seeks is injunctive in nature (the restoration of its prior contractual relationship with Express Scripts and/or readmission back into Express Scripts' pharmacy provider network), so the financial information Express Scripts seeks is not relevant.

In response, Express Scripts argues that this information is relevant to Life Star's damages allegations and to relief sought in its complaint, as four of these six RFPs are tied to allegations in Life Star's complaint (Paragraphs 55, 57, 59, and 61), and the other two RFPs seek financial statements and federal and state tax returns that would shed light on Life Star's allegations of lost profits and loss of business.

The Court finds that the information sought in RFP Nos. 35-39 is relevant because such documents will be necessary for purposes of analyzing Life Star's request for compensatory and/or consequential damages, including lost profits or savings and loss of customers and/or business resulting from Express Scripts' termination. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring "a computation of each category of damages claimed by the disclosing party--who

9

must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based…"). Absent Life Star explicitly limiting its request to injunctive and/or other equitable relief, the financial information requested by Express Scripts in RFP Nos. 35-39 is simply necessary to the calculation of damages in this case. Moreover, the Court reminds Life Star that the parties have entered into a protective order safeguarding materials that Life Star designates as confidential, so any objection based on confidentiality concerns is moot. ECF No. 49. However, the Court will limit the scope of RFP No. 39 to the period of January 1, 2022 to the present. Further, Express Scripts is not entitled to Life Star's federal and state tax returns, as such documentation is unnecessary for purposes of evaluating Life Star's request for damages. *See, e.g.*, *Levine Hat Co. v. Innate Intelligence, LLC*, No. 4:16-CV-01132 SNLJ, 2021 WL 212732, at *1 (E.D. Mo. Jan. 21, 2021) (finding no "compelling need" for disclosure of tax returns because the desired information was "conveyed as verified financial statements."). Accordingly, the Court orders Life Star to produce the documents responsive to RFP Nos. 35-39 with the limit in scope as to RFP No. 39 set forth above. Express Scripts' motion to compel discovery with respect to RFP No. 40 is denied.

    **4. Expenses**

Express Scripts also requests that the Court order Life Star to pay its reasonable expenses incurred in making this motion. However, multiple RFPs have been limited by this Order and one has been denied, a consideration which the Court views as one of the "other circumstances" rendering an award of expenses "unjust." Fed. R. Civ. P. 37(a)(5)(A). And while Express Scripts' motion to compel has been granted in part, some of Life Star's objections were "substantially justified." *Id*. An award of expenses is therefore not warranted. Accordingly, the Court will deny Express Scripts' motion for expenses.

### III. Defendant's Motion for Hearing

As the Court has decided the motion to compel discovery in this Order, the motion for hearing will be denied as moot.

### IV. Defendant's Motion for Leave to File Under Seal

Express Scripts' motion for leave to file under seal relates to Exhibits 1, 12 and 14, which are excerpts from the parties' contract and Express Scripts' provider manual, and Life Star's Rule 26 Initial Disclosures served on Express Scripts. These documents contain confidential, proprietary, and competitively sensitive information. Because the documents contain confidential business information, the Court will grant Express Scripts' motion for leave to file under seal. *See, e.g.*, *IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013) (concluding that "the district court did not abuse its discretion in determining that the potential harm in unsealing confidential and competitively sensitive information outweighs … generalized interest in access to the complaint.") (internal quotation marks omitted).

### V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to compel discovery [ECF No. 50] is **GRANTED in part** and **DENIED in part**. The motion to compel regarding RFP Nos. 28-39 are **GRANTED** but are limited in scope as set forth herein. The motion to compel regarding RFP No. 40 is **DENIED**. The motion for expenses incurred in pursuing the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for hearing [ECF No. 54] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's motion for leave to file under seal [ECF No. 52] is **GRANTED**.

Dated this 24th day of March, 2025.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE